Our final case for oral argument this morning is 23-1942 United States v. Creek. Mr. Sharonis, whenever you're ready. Good morning. May it please the court, my name is Damon Sharonis and I represent the appellant in this matter Jeffrey Creek. On appeal we have raised three issues all related to Mr. Creek's applying the destructive device enhancement and the second and third issues deal with whether or not the sentence was procedurally substantively reasonable. I would like to start my discussion with the court today by dealing with the destructive device enhancement. As the court knows from reading the papers, Mr. Creek was found in possession of a device that was made of a tin can, was epoxied shut, it had a fuse and explosive powder. The government moved for a two-level enhancement at sentencing and Mr. Creek's lawyer at the time objected. As this court knows, the government has the burden to establish that the enhancement is applicable in a case. But only by a preponderance of the evidence, right? And our standard of review is clear error. Well it's clear error for the findings of fact, for sure, but I think the application of those facts to the underlying or the final decision of the enhancement would be a de novo issue. I mean the problem with determining these types of things, a destructive device, the statutory language is sort of broad, right? In the district judge, it's almost like credibility. I mean the district judge is looking at the device and the defendant says, well, I threw it in the water and it made a big boom or I threw it in the field and it made a big boom or I threw it in a bar and it made a big boom. That's a bomb, right? That's the problem. I think I can answer that question. I think that the precedent in this district and the circuit has decided that these issues, first of all, need to be decided on a case-by-case analysis and that the statute is supposed to be looked at in a precise but flexible manner. And I think what really happens in these situations is the courts are taking away from defendants the arguments that I'm just kidding. In other words, if you find a device . . . Well that's, I think that's a very good point, but your problem is with the ghost guns, you know, you know what I mean? Like you've got all these guns and the ammunitions, it's just weird. I mean you put the district court in a ghost guns, we've got hundreds of rounds of ammunition, we've got a convicted felon, and we've got a convicted felon who's at least using methamphetamine on a nearly daily basis and perhaps distributing it, I don't know. But then over in the corner we've got this firework. Like that's, you know, that . . . And then you're asking us to send it back to the district court to say try again. I'm just trying to . . . Sure, I think the district court erred in their analysis by mistakenly relying on COPUS and Johnson in a way that really extended that reasoning. The COPUS, and if you look at the transcript at the beginning of the sentencing hearing, the district court judge essentially said because this was a metal device, even though I think it was a tin can, if you look at the device I think what it was was actually like a chewing tobacco can, because it was a metal canister, because it was epoxied shut and had a wick, it was a destructive device and it relied on COPUS. That's not what COPUS says. Mr. Jonas, I guess kind of echoing some of the concerns that Judge Kirsch has, I'm not really sure what a district judge is to do. Is your position that a district judge always has to take testimony from some sort of expert where the government offers one or, you know, the government offers an agent or what have you to make that determination, or otherwise how else is it supposed to make that determination? Well I think that, and again if we go back to sort of the standard that this court has put forward, there's a two-step process and the two-step process is one, if the device, if looking at the objective features of the device, you cannot say automatically this is a weapon, because that's what the statute is meant to protect people from and to prescribe punishment for, for weapons. So if you look... And isn't your position that the government needed to offer some evidence to support its contention that, objectively speaking, that it is a weapon, it's a destructive device? I think they had to do more than they did. I don't think they did anything. I think what, if you look at Mr. Creek's statement, which was what they relied on, that this was something he used as a firework, throws to make a big boom, that is not different than what somebody would use a firework for, which the court has held as a commercial and legitimate purpose, right? So I think what the court had to do in this situation is look at the objective features and this court has pointed to certain objective features that would take it out of the realm of the just-kidding defense, right? Shrapnel, nails, things like that. And that didn't happen here. There was really no analysis of this device other than the district court saying a device in COPUS, which was somewhat similar, was found to be a destructive device, therefore this is a destructive device. Wasn't it a little bit more than that, though? She made a factual determination that the device was fully assembled and that it was, comparing to COPUS, it was fully assembled, it had the metal canister, it had the gunpowder, it had the wick. It seemed to me that she was proceeding under F-1 by saying that and concluding that based on all of the components that were fully device and I don't need to go any further and look at intent or to the second step you've identified. My response to that is the COPUS case, which she relied on, actually the government and the court missed the moreover portion of that case where they say not only does it have to be these things but moreover, and this was a sufficiency case, COPUS was, it says moreover the government presented evidence that the device could cause bodily injury or COPUS, interestingly enough, looked at the specific intent of the defendant because the defendant in COPUS said this is just meant to blow up stumps. The government presented evidence that this would not be. But I think when you take COPUS and Johnson together it's pretty clear if it qualifies as a destructive device that if it's clear there's a it's a bomb or it's a destructive device that you don't need to go to the second step and look into intent. But the issue there is there are clearly things that this court, that Hammond, that other courts have said are clearly destructive devices. And those are usually situations, you know, the Hammond plus factor, which I know it's not from this circuit, but it's actually what Johnson says just not as clearly. Johnson says there will be situations where when looking at the device it is not clearly something that goes into F-1. So there are fully assembled devices that are not clearly weapons, essentially. And when we get to that point, and I submit that there was no evidence that this device was clearly a weapon or clearly the type of device in COPUS which had detonators, they found it attached to grenades and pipe bombs or all these other things in COPUS. Here what we had was a small device, there was no testimony as to the type of explosion it could make, if there was any shrapnel, if it could hurt anyone. That didn't exist. So when the court was confronted with that situation they should have said well wait a second this is not clearly a weapon. I may find at the end of the day that it is a weapon, but the analysis is if it's not clearly a weapon, which we suggest this was not, we then have to look at the subjective intent. And that then leads to the next step. And there was no, and I understand Judge Kirsch's statement that well it wasn't like he had this device and then there was a bunch of, you know, Candyland games laying around. Certainly there were other things in his house, but the court never even got to that point. You know, the court really just respectfully with short shrift said because this device has similar characters, characteristics to that in COPUS, we are going to find this is a destructive device. So there was no separate analysis as to this specific device. And I think that cuts against Judge Ripple's statement in Johnson that states we need to look at these cases specifically, the devices specifically, through the crucible of case-by-case analysis. So I think, and hopefully I'll have a little bit time left, I think the proper, I think the government did not prove it was a destructive device first. And secondly, the district court erred by not going through the steps that Johnson pointed out. Not looking at intent? Well yes, because objectively I don't think this qualified as a weapon. And then they'd have to look to the intent. So for those reasons, we believe that this court should either reverse the finding of the destructive device enhancement or remand it for the court to use what we suggest would be the proper analysis. And I'll reserve my minute 12 for rebuttal. Thank you. Thank you Mr. Chironis. Mr. Bloodworth. Good morning. Good morning, Your Honors. Thank you. Casey Bloodworth representing the Adelaide United States. Your Honors were correct that when reading COPUS and Johnson together, the district court's analysis on whether the enhancement under B3 being 2K2.1 applies is correct. This was a fully assembled device. And as this court made clear in Johnson, a fully assembled device, the analysis falls under subsection F1 of 5845. The evidence was clear. I want to get back to our test here. Do we have to find any of that here to affirm, I mean why is our analysis just simply the district court made the determination by a probable by a preponderance the evidence and she did not clearly err, period. And I think the court can affirm when answering those questions in the affirmative. There certainly was sufficient evidence by a preponderance standard that this device was similar to a bomb. It had ignitable powders, explodable powders, I believe the testimony or the evidence was that it was chloride aluminum powders, had a wick, it was fully encapsulated. There's no doubt you would concede that this weapon may have been a firework. In other words, a firework can be used as a bomb. If someone walks into a crowded grocery store with a half stick of dynamite, it could be similar to a bomb, right? If somebody on the 4th of July at 10 o'clock puts a half stick of dynamite like a sewer drain, right? So they light it, it makes this gigantic boom. Maybe it's not intended to be used as a bomb, but it's the same thing. Half stick of dynamite is a half stick of dynamite. I do believe that's correct. And when you look at a fully assembled device such as that or such as what Mr. Creek had, I don't believe the analysis ends. Is that the key from your standpoint that the district court made the factual determination that it was fully assembled? I think that's part of the analysis. If the court had not made the determination that it was fully assembled, would you have to go to step two in Johnson? I don't think you would have to because as Judge Kirsch pointed out, the standard on whether or not that was error is whether there was evidence by a preponderance of the evidence and there was clear error. There was evidence by a preponderance that this device was similar to a bomb. There's nothing that's been pointed out that that's clear error. The district court relied on something that was an error of fact or not in evidence. So I think the analysis can end there and the case can be affirmed. But to answer your question, if for some reason, hypothetically speaking, those findings weren't made, I think the analysis could have continued. Okay, is this a completed device? Yes, this is a completed device. So I think we have to and then the analysis can end. I don't think it would have been error for the district court to say, I don't know if this is a completed device. So they could then continue on and look is this a combination of the parts where subjective intent is relevant. And I think Johnson does a great job of pointing that out because in Johnson, I believe the district court went on to exercise discretion and look at subjective intent on the device there because of one very important point. It wasn't a fully assembled device. The device in Johnson was not capable of exploding, or at least there was some evidence presented. I believe the evidence in Johnson was that the wick didn't actually protrude into the ignitable powers. I think that illustrates probably what I'm in our and that's my question that if given Johnson, if this were not fully assembled or if the court had not made that factual determination, do you automatically go to the second step or is it still possible that you could find it's a bomb or a destructive device without going to that second step? Yeah, I don't think it's automatic. I think you could find it without going to that second step and I think that that's what the district court here did based on evidence on a preponderance standard. Well, the court here found it was fully assembled. Right, so maybe I'm just misunderstanding the court's question and I apologize for that. I don't think you automatically have to go to that second step. I think if the evidence that's presented leads you to that, I think the court has discretion to do so. As this court said in Johnson, when you're dealing with a device that may not be capable of igniting, which was what the device was in Johnson, but at the end of the day, the evidence was clear to the district court that this was a fully compared to the device in COPUS. There was no discernible difference between the two devices and there's no reason to come up to a different result before this court I would submit. So I think the court's application of the enhancement 2K2.1 was proper, it was supported by evidence, by a preponderance and there was no clear error in relying on that evidence. Additionally, I think the court's sentence was supported by her analysis of the district court's analysis of the 3553A factors. So unless there are any further questions, the government would rest on its brief and ask the court to affirm the judgment and sentence below. Okay, thank you Mr. Bloodwick. Thank you. Mr. Sharonis. I'll give you your two minutes. Okay, thank you. You know, Judge Kirch asked a really interesting question to the government. The government conceded and what Judge Kirch asked was, well come on, this could be a firework or it could be considered a firework. Now if there was shrapnel in this, if there was metal in this, or excuse me, if there were nails in this, Judge Kirch wouldn't have asked that question because we would not be able to argue objectively that this was a firework. But because those things don't exist, there is that issue as to whether or not this is a weapon or this is a firework. And when you have that issue, when you have that legitimate issue, which you won't have in every case, you can't come into somebody's house and nails and say this is just a firework. But here, as Judge Kirch asked and the government conceded, this could be potentially a firework. So all we're asking in that situation, when it's not clearly a destructive device, you go to the analysis that Johnson stands for. And if the government is proposing that because this device was assembled, you cannot look at the subjective intent of Mr. Creek, they are wrong. Johnson says specifically there will be times with the subjective intent. And they point to the Werstein case, which is a great case because that deals with two devices. One of them is a pipe bomb that they would not allow them to argue under any standard was anything other than a weapon. And the other device was more akin to a firecracker. And they took the subjective intent of defendants into consideration. I think these were younger kids and there was no evidence they were trying to harm anybody and things along those lines. So they correctly analyzed it in Johnson and Werstein. I think the need to though, if it could be a firework or a bomb, do you need to look at intent if, this goes back to what Judge Kirch started with, if the other surroundings suggest to you and establish for you by a preponderance of the evidence that it was a destructive device? When you talk about the other surroundings, are you talking about? The other, the ammunition, the guns. What was interesting is that was never mentioned. That was never mentioned. Now we can assume the court thought that, but the court did not say because of the other things found in this house we are going to hold that this was a destructive device. What the court said was I am bound by COPUS to find that this is a destructive device because there are some similarities between the devices. And if you read COPUS, it's a much more serious device than what was found in Mr. Kreef's case. So I think that the court had to go through the analysis and they did not. They mistakenly relied on COPUS and they also said because this device is assembled, we don't need to look at a tent. And that's not what our circuit has held. Okay, thank you Mr. Shronis. Thanks to both counsel. The court will take this case under advisement and we are in recess for the day.